EDMUND R. WEEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. J. FINCH, ADMINISTRATOR, ESTATE OF JOHN ARTHUR WEEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33796, 42544.   Promulgated June 9, 1932.

*F. B. Morrill, Esq.*, for the petitioners.
*Eugene Meacham, Esq.*, for the respondent.

342

OPINION.

MATTHEWS: The only issue in this proceeding is the March 1, 1913, value of the property known as the Week site. We are of the opinion and have so found that such property did not have a value on March 1, 1913, in excess of $43,254.50, its cost. Accordingly, the action of the respondent in determining the deficiency herein was correct. We will briefly discuss the reasons upon which we base our conclusion as to the value of this property.

The petitioners are contending that on March 1, 1913, the property in question had a fair market value at least equal to its sale price. There is no contention that the property as farming property had any value in excess of its cost. The claim of a larger value is based upon its value as a potential water-power site. It is evident that for property to have a value as a power site is must not only be a feasi-

ble place to erect a dam, but there must be a market for the power. There are doubtless many sites on rivers which are physically and geologically well suited for the erection of a dam, but where such sites are in unpopulated areas or where, on account of other power plants in the vicinity, there would be no market for the power, it can not be said that they have a " market value." The petitioners, therefore, must not only show that this was a feasible site for a dam, but that on March 1, 1913, there was a market for such sites or for the power developed therefrom, and then establish the actual fair market value thereof on the basic date.

The evidence introduced by the petitioners shows that the two Week brothers purchased the property because they thought that it would be valuable as a water-power site. E. R. Week, Jr., the son of petitioner Edmund R. Week, stated that he had made an investigation of the property in 1904 and from then until 1915 was employed at various times in connection with the property. He was of the opinion after such investigation that the site was a feasible one for the erection of a dam with a head of 55 feet and that a plant could be erected and operated economically. Upon cross-examination he admitted that he was not a graduate engineer and that he began the investigation of this site soon after he left college at a time when he had had very little experience in engineering work. His testimony is in conflict with that of four expert witnesses called by the respondent. These witnesses were Eugene Logan, a consulting engineer, who had been an employee of the Washington Water Power Company from 1907 until 1926, and had been familiar with the Spokane River territory since 1912; R. K. Tiffany, a graduate hydraulic engineer in the employ of the United States Reclamation Service from 1910 to 1920, and State Superintendent of Hydraulics for the State of Washington from 1925 to 1930; Joseph Jacobs, a graduate civil engineer who had had occasion to examine the Spokane River in 1905, 1909 and 1925 in connection with proposed projects; and David C. Henny, a graduate of the University of Delft, Holland, in 1881, who had been a supervising engineer on many notable dam and power projects. The two witnesses last named were often employed as consultants as to the practicability of proposed electrical projects. None of these witnesses had any interest in this case and their testimony can be regarded as wholly unbiased. They testified almost unanimously that they did not consider this site a feasible one for a dam or that it would be an economical place to erect a power plant. These opinions were based on their experience, on their knowledge of the geological formation at the site, the nature of the soil and of the river bed, and the fact that there was danger of considerable seepage.

344

The evidence further shows that due to the increased business around Spokane there had been between 1906 and 1913 considerable activity along the river with respect to water-power sites. However, this activity had lessened to a considerable extent by 1913, by which time the Washington Water Power Company had erected four power plants and dams which were capable of generating an amount of electricity which was 80 per cent in excess of the demand. Any company or individual erecting a dam and power plant at the Week site would have had to compete with this company. It was the opinion of the four expert witnesses mentioned above that electricity generated from a single plant would not be as satisfactory as that generated from a connected system of plants. Although there were two companies closely adjacent to the Week site, which were both users of electricity to a considerable extent, and also the city of Spokane was in the market for electric power for their pumping station, the evidence was insufficient to show that it would have been feasible or more economical for these companies or anyone else to purchase this property and erect a dam than to purchase their electricity from the Washington Water Power Company. In fact, what little evidence there was on this point tended to show that such a project would have been more expensive.

As to the value of this property on March 1, 1913, the respondent's experts testified that the property had no value on March 1, 1913, other than its value as farming property, and that they would not have recommended its purchase as a potential power site on that date. The petitioner's only expert witness in hydraulic matters was not asked his opinion of the March 1, 1913, value and was careful to state that he would not say that the site was a feasible one for a dam. The only witness for the petitioners who was asked his opinion as to such value was Fred E. Baldwin, who owned real estate in this vicinity and had done appraisal work for water power companies. He stated that if the water-power site sold in 1923 for $200,000, he was of the opinion that its value on March 1, 1913, was fully as great. He had never examined the particular site and stated that he did not consider himself qualified to value a water-power site. Clearly, his testimony is of little or no value and is contradicted by that of the respondent's witnesses.

There was other testimony introduced as to the costs to the Washington Water Power Company of the various sites upon which it had erected dams, various offers made for this property in 1911, and the nature of the property and amount of flowage at the various water-power sites, which we have duly considered in reaching our conclusion, but which we do not deem necessary to discuss at any length. It is enough to say, in view of our finding and of the above discussion of the evidence, that the petitioners have failed to sustain the burden

of proving that there was a market on March 1, 1913, for this water site or that it had a fair market value on that date in excess of cost. Such a conclusion is strengthened by the evidence introduced by the respondent which showed that there was no market for such a site on the basic date and that it did not have a value on that date in excess of cost.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRAMMELL dissents.

GOODRICH, dissenting: I can not agree that a site which sold for $200,000 in 1923 had no market value in excess of its cost as farm land at March 1, 1913, when, according to the evidence, there was then a greater demand for power sites because of a larger population within the area to be served and more activity in the development of water power and in general business than existed at the time the sale was made.

LANSDON and BLACK agree with this dissent.